RUTH STERLING, Special Adm'r of the Estate of Houston Sterling, Deceased, Plaintiff-Appellee and Cross-Appellant, v. ROCKFORD MASS TRANSIT DISTRICT, Defendant-Appellant and Cross-Appellee (John Parthenios *et al.*, Indiv. and d/b/a Parthenios Luncheonette, *et al.*, Plaintiffs-Appellees; Marlene Carter *et al.*, Defendants-Appellants).—RUTH STERLING, Special Adm'r of the Estate of Houston Sterling, *et al.*, Plaintiffs-Appellees, v. ROCKFORD MASS TRANSIT DISTRICT *et al.*, Defendants-Appellants.

Second District   Nos. 2—01—0876, 2—01—0926 cons.

Opinion filed February 6, 2003.—Rehearing denied March 11, 2003.

Karen L. Kendall, Craig L. Unrath, and Robert W. Dewey, Jr., all of Heyl, Royster, Voelker & Allen, of Peoria, and Douglas J. Pomatto, of Heyl, Royster, Voelker & Allen, of Rockford, for appellant Rockford Mass Transit District.

Robert E. Hillison, of Engelberg & Hillison, of Chicago, for appellant Ralph-field Hudson.

Thomas G. Ruud and Brian K. Larkin, both of Rockford, for appellant Marlene Carter.

Thomas D. Fazioli, of Law Offices of Thomas D. Fazioli, of Addison, and

Margarita T. Kulys, of Law Office of Margarita T. Kulys, of Inverness, for appellee Ruth Sterling.

John M. Boreen, of Rockford, for appellees Harley Foster, Jim Parthenios and John Parthenios.

Gregory H. Clark, of Rockford, for appellee Delila Campbell.

JUSTICE GROMETER delivered the opinion of the court:

The plaintiffs in this case are Ruth Sterling, as special administrator of the estate of Houston Sterling, deceased (Sterling); John Parthenios and Jim Parthenios, individually and d/b/a Parthenios Luncheonette, a partnership (collectively Parthenios); Delila Campbell; and Harley Foster. Plaintiffs filed multicount complaints against defendants Ralphfield Hudson, Rockford Mass Transit District (RMTD), and Marlene Carter, an RMTD employee. Plaintiffs sought recovery for injuries and damages sustained in an automobile accident. Plaintiffs' theory of liability against RMTD was based on the doctrine of *respondeat superior* for the alleged negligent conduct of Carter.

At the close of the evidence, plaintiffs moved to voluntarily dismiss Carter. The trial court granted the motion with prejudice. The trial court then denied RMTD's motion to dismiss the counts against it. A Winnebago County jury returned a general verdict in plaintiffs' favor. Following the denial of their posttrial motions, RMTD and Hudson appealed. We consolidated the appeals for purposes of review. For the reasons that follow, we affirm.

## I. BACKGROUND

This case involves an accident that occurred on March 7, 1995, at approximately 10 a.m. at the intersection of Mulberry and Church Streets in Rockford, Illinois. At the site of the accident, Church Street is a one-way road with three lanes permitting only southbound traffic. Mulberry Street is a two-lane thoroughfare with one lane for westbound traffic and one lane for eastbound traffic. The intersection at Mulberry and Church Streets is controlled by a traffic signal. A restaurant known as the Parthenios Luncheonette is located on the southwest corner of the intersection.

Just prior to the accident, Carter was driving an RMTD bus westbound on Mulberry Street. The bus contained two passengers, Angela Grant and Harley Foster. As Carter approached Church Street from the east, the traffic signal at the intersection was red, and she brought her vehicle to a stop. Carter's bus was the third vehicle behind the stop line at the intersection. After the signal turned green, Carter followed the two vehicles ahead of her into the intersection. At ap-

proximately the same time, Ralphfield Hudson was driving a Cadillac southbound on Church Street. Hudson's vehicle struck the right front side of the bus. The bus then collided with the Parthenios Luncheonette. As a result of the accident, Houston Sterling was killed and Delila Campbell was injured. Both Houston and Campbell were patrons of the Parthenios Luncheonette. Foster was also injured in the accident.

The accident spawned several lawsuits. Ruth Sterling, as special administrator for the estate of her deceased husband, brought a multiple-count lawsuit naming Hudson, RMTD, and Carter as defendants. Counts I, III, IV, and V of Sterling's seventh amended complaint were directed against RMTD. Counts III and V were dismissed prior to trial. Count I of Sterling's seventh amended complaint alleged that RMTD, by and through its employee, Carter, was negligent in:

"(a) operat[ing] a motor vehicle without keeping a proper and sufficient lookout, to wit, [Carter] failed to see if there was any southbound traffic before and while she entered the intersection;

(b) fail[ing] to give an audible warning with a horn when a special hazard existed, to wit, a vehicle was approaching and entering the intersection from [Carter's] right;

(c) proceed[ing] at a speed which was greater than reasonable and proper and fail[ing] to slow or stop her vehicle while approaching, while entering, and while crossing an intersection and when a special hazard existed, and fail[ing] to decrease speed to avoid colliding with a vehicle contrary to the provisions of Ill. Rev. Stat. Ch. 95½, Section 11—601 [sic];

(d) fail[ing] to drive within a single lane contrary to the provisions of Ill. Rev. Stat. Ch. 95½, Section 11—601 [sic];

(e) after the collision with the HUDSON vehicle, fail[ing] to decrease the speed of the bus to avoid colliding with and entering into the Parthenios Restaurant;

(f) fail[ing] to keep both hands on the steering wheel while driving, and as a result thereof, after the impact with the HUDSON vehicle, the defendant, CARTER, failed to maintain control of her vehicle, and failed to take any evasive action to avoid entering the Parthenios Restaurant;

(g) operat[ing] her motor vehicle through the intersection in violation of the automatic traffic lights contrary to the provisions of Ill. Rev. Stat. Ch. 95½, Section 5/11—306 [sic]."

Count IV of the complaint, which alleged wilful and wanton misconduct on the part of RMTD, was dismissed without prejudice. Relevant here, the suits filed by plaintiffs Parthenios, Campbell, and Foster each contained allegations similar to count I of Sterling's complaint. For

purposes of trial, plaintiffs' suits were consolidated with a complaint filed by Carter against Hudson and a counterclaim for contribution and property damage filed by RMTD and Carter against Hudson.

Following the presentation of all of the evidence, but prior to closing arguments, Sterling, Parthenios, and Foster moved to voluntarily dismiss Carter as a defendant. The trial court granted the motion with prejudice. The following day, Campbell also moved to dismiss Carter as a defendant. The trial court granted Campbell's motion with prejudice. RMTD then moved for a judgment in its favor, arguing that because its agent (Carter) had been dismissed there could be no cause of action against it, the principal. The trial court denied RMTD's motion without comment. With respect to the lawsuits brought by Sterling, Parthenios, Foster, and Campbell, the jury returned a general verdict against Hudson and RMTD, apportioning 70% of the fault to Hudson and 30% to RMTD. The jury awarded $1.7 million to Sterling, $121,853 to Parthenios, $1,671.75 to Foster, and $29,532 to Campbell. With respect to the claims against Hudson, the jury awarded Carter $420,288.91 and RMTD $5,411.35. The awards to Carter and RMTD reflected a 30% reduction for the negligence attributable to them.

RMTD filed a posttrial motion arguing, among other things, that it was entitled to judgment notwithstanding the verdict (judgment *n.o.v.*). RMTD advanced three reasons why it was entitled to judgment *n.o.v.* First, RMTD renewed its argument that the voluntary dismissal with prejudice of Carter required its dismissal. Second, RMTD claimed that plaintiffs failed to prove that Carter could have stopped the bus after the impact with Hudson's vehicle. Third, RMTD asserted that there is no duty on the part of a driver to anticipate the negligence of others. The trial court denied RMTD's motion. In rejecting RMTD's argument that Carter's dismissal constituted an "adjudication on the merits," the trial court relied on *DeLuna v. Treister*, 185 Ill. 2d 565 (1999). The trial court explained:

> "In this case, it is clear that the stated reason for dismissing Ms. Carter at the close of the evidence was that it would simplify the instructions to the jury, and the unstated reasons which defendant asserted in argument was it was a strategy decision to keep the jury from sympathizing with her because of her emotional outbursts of crying in court. There was no evidence of a settlement with her and a release having been given in exchange for the dismissal. Nor was there any evidence that plaintiffs acknowledged that their claims against her had no merit."

The court went on to rule that even if the voluntary dismissal with prejudice constituted an "adjudication on the merits," it was personal to Carter. Hudson also filed a posttrial motion, which the trial court

denied. Both Hudson and RMTD filed separate appeals. We consolidated the appeals for review. In addition, Sterling filed a cross-appeal. On June 6, 2002, however, we granted Sterling's motion to dismiss the cross-appeal. Accordingly, only the appeals of Hudson and RMTD are before us.

## II. ANALYSIS

### A. Appeal No. 2—01—0876

RMTD raises four issues on appeal. First, RMTD asserts that plaintiffs committed reversible error in violating a motion *in limine* regarding whether Carter wore a seatbelt. Second, RMTD claims that Carter's voluntary dismissal with prejudice entitled it to judgment in its favor. Third, RMTD alleges that the plaintiffs failed to establish the elements of duty and proximate cause. Finally, RMTD argues that the jury's verdict was excessive and unreasonable. We address the second issue raised by RMTD in the published section of this decision. We resolve the remainder of the issues raised by RMTD, as well as those issues raised by defendant Hudson, in the unpublished portion of this decision.

### 1. Motion *In Limine*

The material in this section is nonpublishable under Supreme Court Rule 23 (166 Ill. 2d R. 23).

### 2. Effect of Carter's Voluntary Dismissal

■ RMTD claims that plaintiffs' decision to voluntarily dismiss Carter with prejudice entitles it to judgment in its favor. In *Towns v. Yellow Cab Co.*, 73 Ill. 2d 113 (1978), our supreme court stated:

"When an action is brought against a master based on the alleged negligent acts of his servant, and no independent wrong is charged on behalf of the master, his liability is entirely derivative, being founded upon the doctrine of *respondeat superior*. In this regard, it has been said that the liability of the master and servant for the acts of the servant is deemed that of one tortfeasor and is a consolidated or unified one." *Towns*, 73 Ill. 2d at 123-24.

Relying on these principles, the court developed what has become known as the *Towns* doctrine. See *Bachenski v. Malnati*, 11 F.3d 1371, 1377-78 (7th Cir. 1993). The doctrine provides that, in suits based on *respondeat superior*, a judgment for either the employer or the employee, arising out of an action predicated on the alleged negligence of the employee, bars a subsequent suit against the other for the same claim of negligence where the agency relationship is not in question. *Towns*, 73 Ill. 2d at 122-23.

Invoking *Towns* and the doctrine of *res judicata*, RMTD claims

that the trial court erred in refusing to enter judgment in its favor after the court granted plaintiffs' motion to voluntarily dismiss Carter. RMTD argues that plaintiffs' motion to voluntarily dismiss Carter, which was made at the close of the evidence and which the trial court granted with prejudice, constituted an adjudication on the merits. Thus, RMTD reasons, plaintiffs' claims against RMTD, which were based on a theory of *respondeat superior*, were barred.

■ The doctrine of *res judicata* provides that a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the parties or their privies on the same cause of action. *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 334 (1996). The doctrine applies if the following three requirements are met. First, there must be a final judgment on the merits rendered by a court of competent jurisdiction. Second, there must be an identity of cause of action. Third, there must be an identity of parties or their privies. *Rein*, 172 Ill. 2d at 335. In the present case, the parties do not address whether the second and third elements of *res judicata* have been satisfied. Instead, the parties only dispute whether the voluntary dismissal of Carter with prejudice operated as an adjudication on the merits. Accordingly, we limit our discussion to addressing whether, in an action based on the doctrine of *respondeat superior*, the voluntary dismissal with prejudice of an employee, entered after the close of evidence, constitutes an adjudication on the merits such that a suit against the employer is barred under the doctrine of *res judicata*. Whether a claim is barred by the doctrine of *res judicata* is a question of law, which we review *de novo*. *Federal Signal Corp. v. SLC Technologies, Inc.*, 318 Ill. App. 3d 1101, 1116 (2001).

■ RMTD claims that the voluntary dismissal of Carter with prejudice constituted an adjudication on the merits. RMTD relies on case law that provides that a "dismissal with prejudice" is tantamount to an adjudication on the merits (see *Van Slambrouk v. Marshall Field & Co.*, 98 Ill. App. 3d 485, 487 (1981); *Village of Arlington Heights v. American National Bank & Trust Co. of Chicago*, 72 Ill. App. 3d 744, 746 (1979)). The viability of such holdings is in doubt, however, in light of the supreme court's decision in *Downing v. Chicago Transit Authority*, 162 Ill. 2d 70 (1994). There, our supreme court rejected the proposition that a summary judgment "by definition" means a judgment on the merits. *Downing*, 162 Ill. 2d at 77. The court cautioned that what constitutes an adjudication on the merits should be based on the context in which a ruling is made. *Downing*, 162 Ill. 2d at 77. The holding in *Downing* has been extended to involuntary dismissals. See, *e.g.*, *Brady v. Joos*, 273 Ill. App. 3d 793, 797-98 (1995) (holding that involuntary dismissal with prejudice pursuant to Supreme Court

Rule 103(b) (134 Ill. 2d R. 103(b)) did not constitute a judgment on the merits because defendant was dismissed for a reason bearing no relationship to the actual merits). Accordingly, we reject RMTD's request that we automatically equate Carter's dismissal with prejudice as an adjudication on the merits.

The question remains, then, under what circumstances will a voluntary dismissal with prejudice be deemed an adjudication on the merits. In accord with the trial court, we believe that the answer to this inquiry can be found in *DeLuna v. Treister*, 185 Ill. 2d 565 (1999) (*DeLuna II*). In *DeLuna II*, the plaintiff filed a medical malpractice action against Dr. Treister. The plaintiff also alleged that St. Elizabeth's Hospital (St. Elizabeth's), as Dr. Treister's employer, was vicariously liable. St. Elizabeth's filed a motion pursuant to section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—619) to dismiss the claims against it on the basis that the plaintiff failed to comply with the statutory requirements for filing a medical malpractice action. The trial court granted the hospital's motion and dismissed St. Elizabeth's without prejudice. On identical grounds, the court dismissed with prejudice all counts against Dr. Treister. Instead of seeking leave to refile the action in compliance with the statutory requirements, the plaintiff opted to appeal, challenging the constitutionality of the statutory requirements for filing a medical malpractice action. Our supreme court eventually found the statute constitutional. See *DeLuna v. St. Elizabeth's Hospital*, 147 Ill. 2d 57 (1992) (*DeLuna I*). Subsequently, the plaintiff refiled his medical malpractice action against St. Elizabeth's and Dr. Treister. Dr. Treister moved to dismiss, arguing that his prior dismissal with prejudice in *DeLuna I* constituted a dismissal "on the merits" for purposes of Supreme Court Rule 273 (134 Ill. 2d R. 273 (providing that, with certain exceptions, involuntary dismissals operate as adjudications on the merits)) and that the doctrine of *res judicata* barred the suit against him. The trial court granted Dr. Treister's motion to dismiss. The trial court also granted St. Elizabeth's motion to dismiss on the basis that, because the plaintiff's theory of liability was based on *respondeat superior*, the dismissal of the hospital's agent required the dismissal of it, the principal.

The supreme court held that the trial court properly dismissed the plaintiff's cause of action against Dr. Treister because the plain language of Rule 273 compelled a finding that the dismissal of Dr. Treister was "on the merits." The court explained that the dismissal was involuntary and none of the exceptions listed in Rule 273 applied. *DeLuna II*, 185 Ill. 2d at 573-74. However, the court determined that the suit against St. Elizabeth's could proceed. The court recognized

that, as a general rule, the dismissal of an agent compels the dismissal of any vicarious liability claim against the principal. *DeLuna II*, 185 Ill. 2d at 581. However, relying on section 51 of the Restatement (Second) of Judgments (Restatement (Second) of Judgments § 51 (1982)), the court found that the defenses articulated by Dr. Treister and St. Elizabeth's were substantively different—Dr. Treister was dismissed *with prejudice* while the hospital was dismissed *without prejudice*. The court explained:

"By virtue of Rule 273, only Dr. Treister could assert a prior adjudication upon the merits that prevented plaintiff from further pursuing his medical malpractice action against the physician. That defense, unavailable to the hospital, was 'personal' to Dr. Treister. Consequently, the hospital was not entitled to dismissal *** on the basis that Dr. Treister had been dismissed." *DeLuna II*, 185 Ill. 2d at 581.

■ Thus, the key inquiry is whether the defenses articulated by the parties are substantively different. Here, Carter's judgment against plaintiffs was based on the fact that plaintiffs voluntarily dismissed her. It was not based on any finding as to her liability. Carter's negligence had never been determined. Thus, Carter's judgment was based on a wholly different "defense." Because plaintiffs did not voluntarily dismiss RMTD, RMTD could not assert the same defense. In other words, the voluntary dismissal was personal to Carter.

Moreover, we believe that it would be unfair to dismiss RMTD under the circumstances of this case. As in *DeLuna II*, had plaintiffs chosen to do so, they could have sued RMTD alone. That they sued Carter, only to dismiss her for a reason unrelated to the merits, was a mere fortuity. See *DeLuna II*, 185 Ill. 2d at 582 (holding that it would be unfair to permit hospital to avoid liability "merely because of its employee's fortuity in obtaining an involuntary dismissal from plaintiff's lawsuit where that dismissal did not otherwise absolve the employee of fault").

RMTD argues that a contrary result is dictated by *Leow v. A&B Freight Line, Inc.*, 175 Ill. 2d 176 (1997). *Leow* involved whether the involuntary dismissal pursuant to section 2—619(a)(5) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(5) (West 1994)) operates as an adjudication on the merits barring a *respondeat superior* claim against an employer. In *Leow*, the plaintiff was injured in a loading dock accident. The plaintiff filed suit against A&B, claiming that it was liable under the doctrine of *respondeat superior* for the plaintiff's injuries, which were allegedly caused by one of A&B's employees. The plaintiff later amended its complaint to add a count against the employee. The

employee filed a motion to dismiss the count against him pursuant to section 2—619(a)(5) on the basis that the two-year statute of limitations had run as to him. The trial court granted the employee's motion. Thereafter, A&B filed a motion to dismiss on the basis that the dismissal with prejudice of the action against its employee operated as *res judicata* against any action against it. The trial court granted A&B's motion. Relying principally on its reasoning in *Downing*, our supreme court reversed, finding that the first element of *res judicata*, an adjudication on the merits, was not present because the basis for granting the employee's motion to dismiss bore no relationship to the actual merits of the plaintiff's case. *Leow*, 175 Ill. 2d at 188.

The *Leow* court recognized that the type of procedural device used to assert the statute-of-limitations defense in *Downing* (summary judgment) differed from the device used by the employee in *Leow* (motion pursuant to section 2—619). Nevertheless, the court rejected A&B's argument that Rule 273 (134 Ill. 2d R. 273) dictated a contrary result. Looking to the intent and purpose of Rule 273, the court reviewed *Costello v. United States*, 365 U.S. 265, 5 L. Ed. 2d 551, 81 S. Ct. 534 (1961), in which the Supreme Court examined Federal Rule of Civil Procedure 41(b) (Fed. R. Civ. P. 41(b)), the federal counterpart of Rule 273. The *Costello* Court determined that the *res judicata* effect of Rule 41(b) dismissals was intended to apply to situations where a defendant had to incur the inconveniences of preparing to meet the merits of a controversy. *Leow*, 175 Ill. 2d at 185. Although the *Leow* court found that the purpose of Rule 273 was identical to that of Rule 41(b), the court chose to limit the *Costello* rule to cases in which separate defendants are involved. *Leow*, 175 Ill. 2d at 186. As the supreme court explained in *DeLuna II*:

> "Where the party that procures an involuntary dismissal in a case is the same party that later asserts that the dismissal was a 'final adjudication on the merits,' then whether an adjudication on the merits actually occurred is determined by applying Rule 273 according to its plain terms. [Citation.] But where the party seeking to invoke the doctrine of *res judicata* is relying on the prior dismissal of a claim against a *different* party, then, *Leow* concluded, the prior dismissal must have caused the defendant to prepare to address the actual merits of plaintiff's claim before the dismissal will be deemed 'on the merits.' " (Emphasis in original.) *DeLuna II*, 185 Ill. 2d at 578-79.

The *Leow* court went on to find that the purpose of Rule 273 would not be served by dismissing A&B, since the merits of the case were never examined and A&B was never put through the inconvenience of having to prepare for a trial. *Leow*, 175 Ill. 2d at 186-87.

RMTD claims that *Leow* is squarely on point here. According to RMTD, plaintiffs waited until all parties had rested before voluntarily dismissing Carter with prejudice. Thus, it was "forced" to prepare to address the actual merits of the claim. We disagree. RMTD fails to address one essential question, *i.e.*, what *caused* it to prepare to address the merits. The supreme court's decision in *DeLuna II* makes clear that the *prior dismissal* must have caused the defendant to prepare to address the actual merits of plaintiff's claim before the dismissal will be deemed "on the merits." *DeLuna II*, 185 Ill. 2d at 578-79. In the present case, Carter's dismissal could not have caused defendant to prepare to address the actual merits of plaintiffs' claims since Carter's dismissal occurred *after* RMTD addressed the merits. Thus, the dismissal was not "on the merits." Accordingly, we conclude that *res judicata* did not bar the suit against RMTD.

### 3. Duty and Proximate Cause

The material in this section is nonpublishable under Supreme Court Rule 23 (166 Ill. 2d R. 23).

### 4. Jury Verdict

The material in this section is nonpublishable under Supreme Court Rule 23 (166 Ill. 2d R. 23).

### B. Appeal No. 2—01—0926

The material in this section is nonpublishable under Supreme Court Rule 23 (166 Ill. 2d R. 23).

### III. CONCLUSION

For the aforementioned reasons, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

O'MALLEY and CALLUM, JJ., concur.